UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

PRO BONO INVESTMENTS, INC.,

                Plaintiff,              03 Civ. 4347 (JGK)

                                      <u>OPINION AND ORDER</u>

      - against -

CHRISTINA GREEN GERRY, and ABRAHAM
GOLDNER and JOAN FISHER, Executors of
the Estate of Judith H. Green,

                Defendants.
_____

CHRISTINA GREEN GERRY, and ABRAHAM
GOLDNER and JOAN FISHER, Executors of
the Estate of Judith H. Green,

                    Counterclaim
                    Plaintiffs,

      - against -

PRO BONO INVESTMENTS, INC.; PRO BONO,
LLC, LAWRENCE BISHOP; JOHN DOCKERY;
BISHOP & CO.; FAITH COBGER; RICHARD
CONGER; GRAY SEIFERT & CO., LLC,
f/k/a GRAY, SEIFERT & CO., INC.;
and LEGG MASON,

                    Counterclaim
                    Defendants.
_____

JOHN G. KOELTL, District Judge:

    This is a breach of contract action arising under New

York law brought by the plaintiff Pro Bono Investments,

Inc. ("Pro Bono") against Christina Green Gerry, daughter

of the late Judith H. Green, and Abraham Goldner and Joan

Fisher, the two executors of Green's estate (the "Estate").
The plaintiff brings this motion for partial summary
judgment seeking recovery on a promissory note ("the Note")
allegedly signed by Green to pay Pro Bono's predecessor-in-
interest, Bishop & Co. Under the Note, Green allegedly
agreed to pay $1,000,000 in outstanding loans plus interest
and $88,000 in alleged loans to her daughter Christina
Green Gerry ("Gerry"). Jurisdiction is based on diversity
of citizenship pursuant to 28 U.S.C. § 1332(a)(1).[1]

Pro Bono moves for partial summary judgment pursuant
to Federal Rule of Civil Procedure 56 on two causes of
action: (1) a breach of contract claim based on the Note
and, in the alternative, (2) a claim for unjust enrichment.
The defendants cross-move for summary judgment dismissing
the complaint. In addition to the breach of contract claim
and the unjust enrichment claim, the plaintiff also alleged
a separate claim for payment on the promissory note. The
defendants dispute the Note's authenticity pursuant to the
best evidence rule and argue that Pro Bono is precluded
from relying on the testimony of Lawrence Bishop
("Bishop"), a general partner of Bishop & Co., who was
allegedly the sole witness to Green's purported execution

---

[1] There is complete diversity of citizenship over the original claims
addressed in this Opinion and Order under 28 U.S.C. § 1132. The
plaintiff is a Nevada corporation with its principal place of business
in Arizona. The individual defendants are all citizens of New York.

2

of the Note.  The defendants claim that Bishop's testimony

is barred by New York's dead man's statute, and that, in

any event, the Note is unenforceable because it is

ambiguous.[2]  Accordingly, the defendants seek summary

judgment dismissing the complaint.

## I.

The standard for granting summary judgment is well-

established.  Summary judgment may not be granted unless

"the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as

a matter of law." Fed. R. Civ. P. 56(c); see also Celotex

Corp. v. Catrett, 477 U.S. 317, 322 (1986); Gallo v.

Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219,

1223 (2d Cir. 1994).  "[T]he trial court's task at the

summary judgment motion stage of the litigation is

carefully limited to discerning whether there are genuine

issues of material fact to be tried, not to deciding them.

Its duty, in short, is confined at this point to issue-

finding; it does not extend to issue-resolution." Gallo,

22 F.3d at 1224.  The moving party bears the initial burden

---

[2] The defendants claim that there never was any contract, written or
oral, between Bishop & Co. and Gerry.  The breach of contract claim is
not asserted against Gerry.  (See Tr. dated Aug. 12, 2005 at 18.)

of informing the district court of the basis for its motion and identifying the matter that it believes demonstrates the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Consol. Edison, Inc. v. Northeast Utils., 332 F. Supp. 2d 639, 642 (S.D.N.Y. 2004).

Summary judgment is appropriate if it appears that the non-moving party cannot prove an element that is essential to the non-moving party's case and on which it will bear the burden of proof at trial. See Cleveland v. Policy Mgt. Sys. Corp., 526 U.S. 795, 805-06 (1999); Celotex, 477 U.S at 322; Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any

evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. T.R.M. Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its initial burden of showing a lack of a material issue of fact, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998); Consol. Edison, 332 F. Supp. 2d at 643; see also Garvin v. Potter, 367 F. Supp. 2d 548, 553-54 (S.D.N.Y. 2005).

## II.

The following facts are undisputed unless otherwise noted.[3]

---

[3] The plaintiff filed a statement of undisputed facts as required by Local Rule 56.1 and the defendants responded to the plaintiff's motion for partial summary judgment by filing a cross-motion that included a statement of undisputed fact that is actually a collection of legal issues and arguments.  To the extent that facts set forth in the plaintiff's Rule 56.1 statement are not disputed, they are deemed admitted if they are supported by the record.  See Local Civ. Rule 56.1(c); Giannullo v. City of New York, 322 F.3d 139 (2d Cir. 2003); see also Yurman Design, Inc. v. Golden Treasure Imports, Inc., 275 F. Supp. 2d 506, 509 (S.D.N.Y. 2003).  The plaintiff filed a

Bishop & Co. was a nominee partnership and a client of the investment advisory firm Gray, Seifert & Co., Inc. ("Gray Seifert"), from 1986 through 2001. (Pl.'s Rule 56.1 Stmt. ¶ 1.) Defendant Lawrence Bishop ("Bishop") was the managing partner of Bishop & Co. during this period.[4] (Pl.'s Rule 56.1 Stmt. ¶ 2.) Green and her daughter, Gerry, were also clients of Gray Seifert from 1980 until the time of Green's death on September 14, 2001. (Pl.'s Rule 56.1 Stmt. ¶ 3, 9.) From 1997 until September 2001, Green or one of her employees made periodic requests to Mr. Bishop that monies be transferred to Green and Gerry. (Pl.'s Rule 56.1 Stmt. ¶ 4.) More than 100 separate transfers, totaling in excess of $1 million, were made by wire from the Bishop & Co. account at Gray Seifert to Green. (Pl.'s Rule 56.1 Stmt. ¶ 5.) Over a period of approximately two years, Bishop & Co. also allegedly transferred at least $87,000 to Gerry. (Pl.'s Rule 56.1 Stmt. ¶ 6.)

On July 12, 2001, Green allegedly executed the Note in which she promised to pay "the principal sum as may be outstanding and due BISHOP & CO from time to time as

---

counterstatement in response to the defendants' Rule 56.1 statement in support of the defendants' cross-motion for summary judgment.

[4] It is a coincidence that the partnership, which was allegedly named after a chess piece (see Bishop Dep. at 30), and its managing partner shared the name "Bishop".

carried on the Company's books . . . ." (See Note attached as Ex. A to Second Amended Compl.)  In the Note, Green allegedly promised to pay interest at a rate of eight percent per year as well as the attorneys' fees and costs associated with any efforts to collect the money owed on the Note if it was not paid on demand.  (Pl.'s Rule 56.1 Stmt. ¶ 7.)  The Note was secured by 440 shares in the capital stock of Green's residential cooperative apartment, 555 Park Ave., Inc., a proprietary lease dated June 1, 1946, relating to Apartment 9W in the building known as 555 Park Avenue in New York, New York, and cash and securities in Mrs. Green's account at Neuberger & Berman LLC ("Neuberger & Berman").  (Pl.'s Rule 56.1 Stmt. ¶ 8.)

By the spring of 2002, Bishop notified Goldner, one of the two executors of the Green Estate, that Green owed a debt to Bishop & Co.  (Pl.'s Rule 56.1 Stmt. ¶ 10.)  At Goldner's request, Bishop & Co. agreed that the Estate could sell Green's apartment on the condition that the proceeds from the sale would be placed into a segregated account for the purpose of satisfying Bishop & Co.'s claim against the Estate.  (Pl.'s Rule 56.1 Stmt. ¶ 12.)  On December 2, 2002, the executors filed a United States Estate Tax Return Form 706, stating that the Estate was

indebted to "Bishop c/o Gray Seifert" in the amount of $1,088,000. (Pl.'s Rule 56.1 Stmt. ¶ 11.)

In August 2002, Pro Bono Investments, Inc. was formed to manage the assets formerly held by Bishop & Co. and now held by Pro Bono, LLC. In February 2003, Bishop & Co. assigned its assets to Pro Bono, LLC. In April 2003, Pro Bono LLC assigned all claims, demands, and rights to damages to Pro Bono Investments, Inc.[5] (Pl.'s Rule 56.1 Stmt. ¶ 14.) On June 13, 2003, Pro Bono filed this action seeking recovery of the debts allegedly owed to Bishop & Co. under the Note. The complaint was amended to withdraw the executors from the suit. The complaint was then amended a second time to add the executors back as parties to the suit. (Pl.'s Rule 56.1 Stmt. ¶ 16.) To date, the plaintiff alleges that neither Green's Estate nor Gerry has repaid any of the money that was allegedly transferred to them by Bishop & Co. (Pl.'s Rule 56.1 Stmt. ¶ 17.)

### III.

The plaintiff argues that Green breached a valid contract with Bishop & Co, namely the Note allegedly executed by Green on July 12, 2001. Under New York law, a plaintiff must prove four elements to prevail on a breach

---

[5] Pro Bono Investments, Inc. and Pro Bono, LLC are referred to throughout this Opinion and Order as "Pro Bono," which refers to whichever entity held assignments from Bishop & Co. at the time in question.

of contract claim: "(1) the making of a contract, (2) plaintiff's performance of the contract, (3) defendant's breach of the contract and (4) damages suffered by the plaintiff." Eastman Kodak Co. v. STWB, Inc., No. 01 Civ. 5124, 2002 WL 31465798, at *15 (S.D.N.Y. Nov. 4, 2002); see also Meadowbrook-Richman, Inc. v. Associated Financial Corp., 325 F. Supp. 2d 341, 357 (S.D.N.Y. 2004).

Pro Bono's motion for partial summary judgment depends upon the premise that Green in fact signed the Note and promised to repay Bishop & Co. The critical question is therefore whether the plaintiff has put forth sufficient admissible evidence to establish that a contract was made because Green in fact signed the Note. The defendants have cross-moved for summary judgment based on the argument that the plaintiff has not put forward any admissible evidence to establish that Green signed the Note, particularly because (1) the copy of the Note produced by the plaintiff is inadmissible pursuant to the best evidence rule, and (2) the testimony of Bishop, the sole living witness to the Note's execution, is barred by the New York dead man's statute from testifying as to its execution. The defendants also argue, assuming the plaintiff can establish that Green signed the Note, that the agreement is too ambiguous to be enforceable.

**A.**

According to declarations submitted by the plaintiff, the original Note cannot be located within the records of Gray Seifert, Legg Mason (the investment advisory firm that acquired Gray Seifert), or in the files of Pro Bono Investments, Inc. (See Decl. of Sonia Pineda dated Oct. 25, 2004 ¶ 3 ("Pineda Decl."); Decl. of Sheila M. Vidmar dated Oct. 25, 2004 ¶ 3 ("Vidmar Decl."); Decl. of Gary D. Yanker dated Oct. 25, 2004 ("Yanker Decl.") ¶ 3.)[6] The plaintiff has therefore produced a purported copy of the Note, which provides, in pertinent part:

> FOR VALUE RECEIVED, JUDITH H. GREEN, individually, ("Payor") hereby promises to pay BISHOP & CO at the office of Gray Seifert & Co., Inc. at 380 Madison Avenue, New York, NY 10017, or at such other place as the holder hereof shall designate in writing, the principal sum as may be outstanding and due BISHOP & CO from time to time as carried on the Company's books, and interest thereon at the rate of 8%, per annum, at said office or other place, as holder shall demand from time to time.
>
> Payor may, at Payor's option, prepay the Note without payment of premium or penalty, at any time, as a whole, or from time to time in part . . . .
>
> Together with Securities and Cash held in Payor's investment account at Neuberger & Berman LLC . . . Payor has pledged and granted a security interest in 440 shares of the Capital Stock of 555 Park Avenue, Inc., together with a Proprietary Lease dated June 1, 1946, relating to Apartment 9W in the building know [sic] as 555 Park Avenue, New York, New York, to Payee as collateral security . . . .

---

[6] According to the Yanker Declaration, Yanker, the president of Pro Bono, believed that he was sent the original Note in January 2003 and that the Note was stored in Pro Bono's files in Tucson, Arizona. The Yanker Declaration states that Yanker provided what he believed to be the original Note to his attorney. (Yanker Decl. ¶ 3.)

> Payor agrees to pay all costs and expenses of
> collection including reasonable attorney's fees.

> This Note shall be construed and enforced in
> accordance with the provision of the law of the State of
> New York.

(See Note attached as Ex. A to Pineda Decl., Vidmar Decl.,

and Second Amended Compl.)

The parties dispute whether the Note itself ever

existed, and whether, assuming the Note existed, the

purported copy correctly reflects the contents of the

original.  These questions of conditional relevance

concerning the existence of the Note and the accuracy of

the purported copy are "based neither on technical

exclusionary rules arising from the best evidence rule, nor

on the general incompetence of the evidence.  Rather, these

questions depend on the probative force of the secondary

evidence — an issue for the jury."  Weinstein, Weinstein's

Federal Evidence § 1008.05[1] (1997).  Federal Rule of

Evidence 1008 expressly provides that:

> When the admissibility of other evidence of contents of
> writings, recordings, or photographs under these rules
> depends upon the fulfillment of a condition of fact, the
> question whether the condition has been fulfilled is
> ordinarily for the court to determine in accordance with
> the provisions of rule 104.  However, when an issue is
> raised (a) whether the asserted writing ever existed, or
> (b) whether another writing, recording, or photograph
> produced at the trial is the original, or (c) whether other
> evidence of contents correctly reflects the contents, the
> issue is for the trier of fact to determine as in the case
> of other issues of fact.

Given these three enumerated examples of conditional relevance, the Court determines only whether the plaintiff has presented evidence sufficient to support a finding by a reasonable juror of the fulfillment of the condition of fact.  See Fed. R. Evid. 104(b) ("Relevancy conditioned on fact").  Under Federal Rule of Evidence 1008, a court decides only (1) whether the plaintiff has established the loss of the original to be more probably true than not true, thereby permitting the introduction of secondary evidence pursuant to Federal Rule of Evidence 1004(1), and whether (2) evidence has been introduced sufficient to support a finding by a reasonable juror that the secondary evidence accurately reflects the original.  See 3 Handbook of Fed. Evid. § 1008.1, art. X (5th ed.)

In this case, there is not sufficient evidence to support a finding by a reasonable juror that the secondary evidence reflects the original.  The defendant has raised genuine issues of material fact as to the authenticity of the alleged original of the Note so as to make the duplicate inadmissible pursuant to Federal Rule of Evidence 1003.  Moreover, based on all the evidence submitted in connection with the cross-motions for summary judgment, and given the exclusion of Bishop's testimony for the reasons explained below, there is insufficient evidence from which

a reasonable juror could find that the original of the Note was executed.

On its face, the purported copy of the Note raises serious questions as to the authenticity of the alleged original of the Note. The Note left open the amount owed, which was to be determined based on a "principal sum as may be outstanding and due to Bishop & Co. from time to time as carried on the Company's books. . . ." It is suspect that reasonable business people and sophisticated investment agencies would not preserve an original of this allegedly valuable promissory note, and the parties have not provided any explanation as to how or why the original Note was lost.

The circumstances surrounding the Note's execution also raise genuine questions as to the authenticity of the alleged original. The original Note was allegedly signed two months before Green's death on September 14, 2001, at a time when Green was undergoing weekly chemotherapy to treat terminal pancreatic cancer. There is evidence that Green was healthy and vital during this period, including deposition testimony by one of the Estate's executors, Fisher, who indicated that Green was involved in routine social engagements with friends in Palm Beach, Florida during August 2001. (See Deposition of Joan Fisher dated

Mar. 2, 2004, at 11-12, attached as Ex. D to Decl. of Barbara Lowe dated Oct. 25, 2004.)  On the other hand, there is evidence to suggest that Green may not have signed the Note.  Gerry claims that Green never mentioned the Note to anyone, that Green was seriously ill during the same period, and that Gerry believed that her mother would have been too sick to sign the Note in the manner shown on the purported copy.  (See Deposition of Christina Gerry dated Dec. 3, 2003 ("Gerry Dep.") at 69-70, attached as Ex. A to Decl. of James G. McCarney dated Sept. 23, 2004 ("McCarney Decl.").)

Bishop was allegedly the sole witness to Green's execution of the Note.[7]  The defendants point out that Bishop, as both a general and managing partner of Bishop & Co., and as a shareholder of Grey Seifert, and later a shareholder of Legg Mason, had a direct financial interest in the transaction.  It is undisputed that Bishop drafted the Note.  (See Bishop Dep at 217.)  According to Bishop, he drafted the Note because "Legg Mason [suggested] that the loan was getting fairly substantial, that maybe we ought to have some documentation and not rely on the personal relationship that I had with Mrs. Green."  (Bishop

---

[7] Marina Lanker, Green's assistant, was allegedly in the apartment, but she did not witness Green sign the Note and there is no evidence that anyone besides Bishop personally witnessed the execution of the Note. (Bishop Dep. at 35-36, 227-30.)

Dep. at 218.)  In addition to Legg Mason's desire to
memorialize these loans, Bishop plainly had a personal
incentive to secure Green's signature on the Note in order
to document any withdrawals from Bishop & Co. that he had
permitted.  The defendants allege that Bishop misused the
funds of Bishop & Co. without the authorization of its
principals.

The plaintiff points to three individuals who could
testify as to the authenticity of the Note:  Bishop, the
Note's drafter and the sole witness to its execution;
Bishop's former assistant at Gray Seifert, Sonia Pineda
("Pineda"); and Bishop's ex-wife, Helene Bishop.  The
defendants respond that Pro Bono is precluded from relying
on Bishop's testimony because his testimony is precluded by
New York's dead man's statute, and that neither Pineda nor
Helene Bishop are competent witnesses for the purposes of
authenticating the Note.

The dead man's statute provides in relevant part:

    Upon the trial of an action . . ., a party or a person
    interested in the event . . . shall not be examined as a
    witness in his own behalf or interest, or in behalf of the
    party succeeding to his title or interest against the
    executor, administrator or survivor of a deceased person . .
    ., concerning a personal transaction or communication between
    the witness and the deceased person . . ., except where the
    executor, administrator, survivor, . . . or person so
    deriving title or interest is examined in his own behalf, or
    the testimony of the  . . . deceased person is given in
    evidence, concerning the same transaction or communication.

N.Y. CPLR § 4519 (McKinney 2005).

The Court of Appeals for the Second Circuit has instructed that, "[a]lthough the Federal Rules of Evidence abolished many common-law rules governing witness competency, they expressly provide that state law determines what rules will apply in civil actions governed by state law. See Fed. R. Evid. 601. Because state law supplies the rules in diversity-of-citizenship cases, see Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78-79, 58 S.Ct. 817, 822-23, 82 L.Ed. 1188 (1938), New York law, including its statute barring the testimony of certain interested witnesses, must be given effect." Rosenfeld v. Basquiat, 78 F.3d 84, 88 (2d Cir. 1996). The dead man's statute applies, under its plain language, "[u]pon the trial of an action," and under New York practice, the statute may not be asserted to exclude evidence used in opposition to a motion for summary judgment. See Clark v. Meyer, 188 F. Supp. 2d 416, 420 (S.D.N.Y. 2002) (citations omitted). However, as Judge Kaplan has persuasively found, under Federal Rule of Civil Procedure 56(e), the evidence submitted on a motion for summary judgment, in support of and in opposition to the motion, "must set forth facts that would be admissible in evidence if offered at trial. Thus, irrespective of how New York might decide this question,

16

the federal rule requires exclusion of evidence on summary judgment motions which the dead man's statute would exclude at trial." Id. at 420-21 (citations omitted). Thus, in this case, if Bishop's testimony would be excluded at trial it cannot be used to support the plaintiff's motion for summary judgment, or to resist the defendant's motion.

Bishop's testimony concerning the Note is barred by the dead man's statute. When the witness is interested and his testimony involves a personal transaction with the decedent, his testimony with regard to that transaction is inadmissible, unless the estate has waived the bar of the statute. See Phillips v. Joseph Kantor & Co., 291 N.E.2d 129, 132 (N.Y. 1972) (dead man's statute renders interested party's deposition testimony inadmissible at trial); Acevado v. Audubon Mgmt., Inc., 721 N.Y.S.2d 332, 335 (App. Div. 2001); Clark, 188 F. Supp. 2d at 420-21.

Here, Bishop has a direct financial interest in the enforcement of the Note, and he is therefore interested for purposes of the dead man's statute. See Duncan v. Clarke, 125 N.E.2d 569, 570 (N.Y. 1955) ("[T]he 'interest' which renders a witness incompetent under [the statute] is only such as results from the 'direct legal operation of the judgment.'") (internal citations omitted).

It is true that Bishop & Co. was the payee on the Note and that, as the plaintiff argues, corporate officers are not interested persons within the meaning of the dead man's statute.  See Jewell v. Irvmac Shoe Shops, Inc., 187 N.Y.S.2d 412 (Sup. Ct. 1959) (providing that corporate officer who was not shareholder was not interested person under the dead man's statute).  However, the present situation is readily distinguishable from Jewell.  In this case, Bishop's testimony regarding his communication with Green is properly excluded because Bishop stands to gain or lose personally and directly from the determination of the validity of the Note.  Bishop was both a general and managing partner of Bishop & Co. and also a founder and shareholder in Gray Seifert.  The record also contains the transcript of a conversation allegedly tape-recorded by Gerry during a January 25, 1998 meeting with Bishop.  (See Ex. D to McCarney Decl.)  According to the transcript, Bishop claimed to have an interest in Bishop & Co., and indicated that Green's assets were being invested through Bishop & Co.  (See id. at 6-7, 9.)  However, there are no records that prove such investments, and if the plaintiff could not prove that there was a Note, then Bishop may be personally liable for the funds that he allegedly loaned to Green from Bishop & Co.

The meeting where the contract document was allegedly created was also a "personal transaction or communication" between Bishop and Green.  See Griswold v. Hart, 98 N.E. 918, 921 (N.Y. 1912) ("[T]he statute . . . excludes the testimony of an interested witness to any knowledge which he has gained by the use of his senses from the personal presence of the deceased."); see also Rosenfeld, 78 F.3d at 88.  Accordingly, Bishop's testimony regarding conversations with Green cannot be introduced pursuant to the dead man's statute.

Pro Bono points to a supporting declaration by Pineda that could allegedly be used to authenticate Green's signature under Federal Rule of Evidence 901.  However, Pineda's declaration in July 2004 merely notes that from time to time, from 1997 through 2001, Green made requests for loans for herself and Gerry, and that Pineda personally received many of these requests.  (See Pineda Decl. dated July 21, 2004 ¶ 6.)  Although this declaration states that Green signed the Note, which promised to repay the loans made by Bishop & Co. (see id. ¶ 9) and affixes another copy of the purported Note as Exhibit B, there is no evidence that Pineda could adequately attest to the fact that Green made such a promise.  Pineda lacks personal knowledge of the signing of the Note and therefore her declarations are

also excludable under Federal Rule of Evidence 602. There is no evidence that Pineda was present in Green's apartment when the Note was allegedly signed.[8]

Finally, Pro Bono offers the testimony of Bishop's ex-wife, Helene Bishop, but there is no evidence that she witnessed the execution of the note and this evidence, that Bishop told her that Green had signed the Note, is plainly hearsay and as such, admissible only for the fact that Bishop told her about the Note and not for the truth of the matter asserted. Accordingly, each of the plaintiff's proffered witnesses cannot testify to the existence of the Note or the accuracy of the purported copy.

Because there are genuine issues as to the authenticity of the alleged original of the Note, and indeed, because of all of the circumstances surrounding the alleged execution of the Note, it would be unfair to admit the alleged duplicate, and the copy of the Note is properly excluded under Federal Rule of Evidence 1003. Moreover, the testimony of the plaintiff's proffered witnesses does not establish that the Note was actually signed by Green. The only person with personal knowledge of the alleged

---

[8] To the extent that the plaintiff argues that Yanker could testify that Green signed the Note, such testimony would also be barred under Federal Rule of Evidence 602 because of his lack of personal knowledge. Bishop was allegedly the sole witness to the Note's execution.

execution of the Note, Bishop, is properly excluded
pursuant to the dead man's statute.

The plaintiff cannot point to any secondary evidence
upon which a reasonable juror could find that the original
Note existed.  Therefore, there is insufficient evidence to
raise a question of fact for the jury to determine under
Federal Rule of Evidence 1008.  Aside from the purported
copy of the Note, which is inadmissible under Federal Rule
of Evidence 1003, the only evidence of any agreement
between Bishop & Co. and Green is the deposition testimony
by Bishop, a fact that the plaintiff acknowledged at oral
argument.  (See Tr. dated Aug. 12, 2005 at 14).
Accordingly, the plaintiff cannot establish that there was
a contract between Green and Bishop & Co.  Therefore, the
plaintiff's breach of contract claim is dismissed.[9]

## IV.

As an alternative to the plaintiff's breach of
contract claim, Pro Bono brings a claim for unjust
enrichment.  The elements for a claim of unjust enrichment
under New York law are: (1) that the defendant was

---

[9] Because the plaintiff's breach of contract claim is dismissed as a
result of a failure to establish the making of a contract, it is not
necessary to reach the issue of whether the alleged contract is
ambiguous.  Both the first and second claims are dismissed.  The first
claim had asserted a claim based on a promissory note and the second
claim was based on breach of contract.  For the reasons explained
above, both claims necessarily fail.

enriched; (2) the enrichment was at the plaintiff's expense; and (3) the circumstances were such that equity and good conscience require the defendants to make restitution. See, e.g., Golden Pac. Bancorp v. Fed. Deposit Ins. Corp., 273 F.3d 509, 519 (2d Cir. 2001). To prove unjust enrichment, the plaintiff must show that it conferred a benefit upon the defendants without adequate compensation. Nakamura v. Fuji, 677 N.Y.S.2d 113, 116 (App. Div. 1998).

While generally quasi-contractual relief, such as unjust enrichment, is not permitted when an express agreement exists, such an agreement would not preclude a claim for unjust enrichment where the agreement may not be enforceable. See, e.g., Bridgeway Corp. v. Citibank, N.A., 132 F. Supp. 2d 297, 305 (S.D.N.Y. 2001) ("Generally, quasi-contractual relief, such as unjust enrichment, is not permitted when an express agreement exists that governs the dispute between the parties . . . . Because there is a dispute as to defendant's obligations under the contract, however, plaintiff's unjust enrichment claim survives, although solely as an alternative to the breach of contract claim.") (citations omitted)); Ox v. Union Cent. Life Ins. Co., No. 94 Civ. 4754, 1995 WL 634991, at *6 (S.D.N.Y. Oct.27, 1995) ("[A]s long as a factual issue remains as to

the fraud claim, recovery under a theory of unjust enrichment may be proper, even in the presence of an alternative breach of contract claim."); Nakamura, 677 N.Y.S.2d at 116 ("[A]lthough the existence of a valid and enforceable contract generally precludes quasi-contractual recovery . . . where, as here, a bona fide dispute exists as to the existence of the contract, the plaintiff may proceed on both breach of contract and quasi-contractual theories.") (internal citations omitted).

Pro Bono argues that Green received over $1,000,000 in cash advances via wire transfers from Bishop & Co. As Bishop & Co.'s successor-in-interest, Pro Bono seeks funds that were allegedly retained by the defendants. The defendants argue that Pro Bono is barred by doctrine of unclean hands from recovering damages for unjust enrichment because Pro Bono took its assignment of Bishop & Co.'s claims under the Note with knowledge of misconduct by Bishop. See Fandy Corp. v. Chang, 707 N.Y.S.2d 361, 361 (App. Div. 2000).

Although the plaintiff's breach of contract claim fails, if there really was a benefit to the Estate, namely, that funds were paid by Bishop & Co. to the Estate without consideration and never repaid, the plaintiff may have a valid claim of unjust enrichment. Indeed, if Green really

borrowed money but failed to repay the loan, then those funds should arguably be returned even though the Note itself fails. See Indyk v. Habib Bank Ltd., 694 F.2d 54, 57 (2d Cir. 1982) (noting recovery for unjust enrichment warranted where no legal contract exists, "but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain, but should deliver to another.") (quoting Matarese v. Moore-McCormack Lines, 158 F.2d 631, 634 (2d Cir. 1947)).

Neither the unjust enrichment claim nor the unclean hands defense can be decided on the motion for summary judgment. It is unclear why funds were transferred from Bishop & Co. to Green and Gerry and what, if anything, they gave in return. There are also substantial questions as to whether the books of Bishop & Co. exist and, if so, what they show. There are no Bishop & Co. records that kept a loan balance owing by Green. Rather, the third-party records of Neuberger & Berman reflect certain transfers to the Neuberger accounts for Green. According to the plaintiff, the books of Bishop & Co. are simply the account statements of Neuberger & Berman, and Bishop & Co.'s books and records, in the form of the Neuberger & Berman statements, were allegedly kept in Bishop's office at Gray

Seifert and Legg Mason.  No separate Bishop & Co. records showing loans from Bishop & Co. to Green or Gerry have been presented.

Thus, there is a genuine issue as to whether Green actually received funds from or invested funds in Bishop & Co.  There is some evidence that Bishop represented that Green was investing in Bishop & Co., in which event the money paid to Green could be the return of capital.

In view of the substantial issues of fact, the defendant's motion for summary judgment with respect to the plaintiff's unjust enrichment claim is denied.


## CONCLUSION

For the reasons explained above, the plaintiff's motion for partial summary judgment is **denied** and the defendants' cross-motion for summary judgment with respect to the plaintiff's claims of breach of contract and for payment on the promissory note is **granted**.  Because genuine issues of fact remain as to the plaintiff's claim for unjust enrichment and the defense of unclean hands, the

defendants' motion for summary judgment on the unjust

enrichment claim is **denied**.

**SO ORDERED.**

**Dated:  New York, New York**
      **September** 3 0 , **2005**

John 6. Koeltl

_____
          **John G. Koeltl**
   **United States District Judge**